UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SHANE A. AKE,

    Plaintiff,

    v.                        CAUSE NO. 3:21-CV-709-DRL-MGG

R. KIEFFER, T. BYERS, J. CAMBLIN, C.
SIMPSON, T. ORPURT, S. HAWK, N.
NEAL, W. HYATTE, and R. CARTER,

    Defendants.

OPINION AND ORDER

Shane A. Ake, a prisoner without a lawyer, filed an amended complaint. ECF 21. The court screened an earlier complaint that was somewhat vague and confusing, and construed it to raise a claim about an alleged violation of Mr. Ake's due process rights at an October 12, 2019, disciplinary hearing and about an alleged three-day deprivation of property in August 2019. ECF 20 at 2-3. The court determined that neither stated a claim, but gave Mr. Ake the opportunity to file an amended complaint to explain his claims more fully.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails

to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In the amended complaint, Mr. Ake alleges that on August 13, 2019, prison officials at Miami Correctional Facility suspected he was intoxicated and ordered that he be restrained and escorted to medical for evaluation. ECF 21 at 2. At medical, the nurse on duty noted:

> Offender does appear to be under the influence of some illegal substance as he is sluggish with his speech, slow with answer, and zoning out with his behavior. Offender's eyes are red and glassy and he did state he was smoking something. Offender will be escorted to AHU for [Temporary Intoxication Hold]. Offender had a [Clinical Opiate Withdrawal] assessment of 6,[1] . . .."

ECF 21-1 at 1. Mr. Ake complains that he spent three days in AHU, though he was never issued a conduct report for intoxication, and he denies admitting that he was intoxicated. ECF 21 at 2-3. Mr. Ake alleges that his three-day detention in AHU without a hearing violated the Constitution and prison policy. *Id.* at 3.

It is likely that any challenge to this detention is untimely. This case was not initiated until September 2021, and a signed complaint was not received until October 2021, both after the two-year statute of limitations had already expired. *See Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (Indiana's two-year statute of limitations for personal injury claims applies to suits filed under 42 U.S.C. § 1983).

---

[1] A Clinical Opiate Withdrawal score of 6 corresponds to an assessment of a mild withdrawal. *See* Clinical Opiate Withdrawal Scale, available at https://nida.nih.gov/sites/default/files/ClinicalOpiateWithdrawalScale.pdf (last visited Aug. 31, 2022).

But even if this claim were timely, it still would not be able to proceed. Before Mr. Ake can claim a right to a hearing or other due process protections under the Fourteenth Amendment, he must first show that he has a liberty interest in avoiding placement in AHU. It is not enough to allege that the prison officials' actions violated prison policy. Policy violations do not amount to constitutional violations. *See Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019) ("[A] constitutional suit is not a way to enforce state law through the back door."); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations").

Due process is required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Outside of punishment, "inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")).

Here, it is apparent that Mr. Ake's three-day stay in AHU was not punitive; his placement was initially for "opiate detoxification." ECF 21-1 at 2. There is nothing to suggest the conditions in AHU imposed an atypical or significant hardship on him, so the three-day placement is not of constitutional significance. *See Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98, n.2-3 (7th Cir. 2009) (collecting cases that held

3

segregation of two to ninety days does not trigger due process concerns and stating, "In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh." (emphasis added)).

Mr. Ake then alleges that after those three days in AHU, instead of returning to an Education Housing Unit, he was taken to BHU, a designated Intoxication Management Unit, for all of August 2019, though there was no disciplinary action pending. ECF 21 at 3; ECF 21-1 at 7-8. On September 4, 2019, he received a Classification Hearing, at which he was reclassified as Idle No Pay and he had a Time Cut Restriction placed on him for 180 days. ECF 21 at 3; ECF 21-1 at 6.

Any challenge to Mr. Ake's placement in the Intoxication Management Unit or to the Classification Hearing is also likely untimely. Regardless, termination from a prison job, the loss of privileges, or a transfer to a less desirable location do not trigger due process protections. *Cochran v. Buss*, 381 F.3d 637, 641 (7th Cir. 2004) (claims that inmate "lost his preferred prison living arrangement, his prison job and his eligibility for rehabilitative programs" were not significant enough to trigger due process concerns). Nor can Mr. Ake claim that losing the ability to earn good time credits for 180 days implicates a liberty interest. *See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) ("[D]enying [an inmate] the opportunity to earn good time credits does not inevitably affect the duration of the sentence, and does not deprive him of constitutional guarantees."). Therefore, these allegations do not state a plausible due process claim.

4

Finally, Mr. Ake complains that because of his allegedly improper placement in the Intoxication Management Unit, he was involved in an incident on October 10, 2019, that never would have happened if he were not in that unit. ECF 21 at 4. Mr. Ake was written up for a Class A Offense of Battery for fighting with his cellmate.[2] ECF 21-1 at 18. He alleges that if he had never been placed in the Intoxication Management Unit, the fight would never have happened. And that placement, he continues, was invalid because he says he did not consent to treatment.

As discussed above, unless a particular placement imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life," federal courts do not get involved with a prison's determination of where a prisoner should be housed. *Sandin*, 515 U.S. at 484. That means that a federal court will not review the prison's determination that Mr. Ake's placement in the Intoxication Management Unit was justified based on the nurse's determination that he showed signs of intoxication. However, inmates possess a Fourteenth Amendment due process liberty interest in "refusing forced medical treatment while incarcerated," *Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019), though that right is balanced against "the relevant state interests," *Sullivan v. Bornemann*, 384 F.3d 372, 377-78 (7th Cir. 2004) (quoting *Cruzan v. Missouri*

---

[2] Mr. Ake does not challenge anything about the October 10, 2019, conduct report, instead focusing on the appropriateness of his placement in the Intoxication Management Unit. That is probably a wise choice. Assuming any challenge to the conduct report would be timely, if he was found guilty of the conduct report and lost good time credits, he would not be able to assert any claim in this civil lawsuit under 42 U.S.C. § 1983 that conflicted with the guilty finding in the disciplinary case unless the guilty finding was vacated or overturned. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (*Heck* applies to prison disciplinary convictions).

*Dep't of Health*, 497 U.S. 261, 279 (1990)). To establish such a claim, the prisoner must demonstrate that the defendant "acted with deliberate indifference to his right to refuse medical treatment." *Knight*, 942 F.3d at 342. "Neither negligence nor gross negligence is enough to support a substantive due process claim, which must be so egregious as to 'shock the conscience.'" *Id.* (citation omitted).

Here, Mr. Ake has alleged nothing that would suggest placement in the Intoxication Management Unit is a type of medical treatment that would require consent. However, even if it were, the complaint establishes that the state's interests in combatting substance abuse within the prison would override Mr. Ake's desire not to participate in substance abuse treatment. The stated purpose of the Intoxication Management Unit is "to enhance the safety and security of Miami Correctional Facility while enforcing the zero-tolerance for all illegal and inappropriate use and possession of controlled and non-controlled substances within the facility." ECF 21-1 at 4 (Facility Directive for Intoxication Management Unit). The Facility Directive further states, "In an effort to address offender misuse within this facility, a unit has been established where offenders who misuse will be housed together in order to monitor their well-being, while maintaining security throughout the facility." *Id.* The nurse's statement listing the signs of intoxication that she observed provides support for the state's interest in housing him in a specialized substance abuse unit, overriding Mr. Ake's alleged refusal to consent. Even if she were mistaken in assessing him, negligence in diagnosing him does not state a constitutional claim. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim

6

of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). Mr. Ake was given the opportunity to clarify the claims he was asserting. His complaints about his placement in AHU and then the Intoxication Management Unit do not state a claim, and no additional facts will change that conclusion.

For these reasons, this case is DISMISSED under 28 U.S.C. § 1915A.

SO ORDERED.

September 2, 2022                              *s/ Damon R. Leichty*
                                               Judge, United States District Court